IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02374-KLM

NICOL NOWLIN, as personal representative of the Estate of Michael Craven,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE, COLORADO,
DAVID C. WALCHER, Sheriff of Arapahoe County, in his official capacity,
LOUIE PEREA, Undersheriff of Arapahoe County, in his official capacity,
VINCE LINE, Bureau Chief, Detention Administration, in his individual and official capacities,
LAURIE HALABA, Captain, Detention Administration, in her individual capacity,
JARED ROWLISON, Captain, Detention Operations, in his individual capacity,
DAVID AXELROD, Detention Operation Technician, in his individual capacity,
WILLIAM RIVAS, Deputy, in his individual capacity,
B.J. BEATTY, Deputy, in his individual capacity,
MOLLY NILL, Deputy, in her individual capacity,
GEOFFREY MAISCH, Sergeant, in his individual capacity, and
TRENT STEFFA, Sergeant, in his individual capacity,

    Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#7][1] (the "Motion").[2] Plaintiff filed a Response [#13] in opposition to the Motion, and Defendants filed a Reply [#21]. The Court has reviewed the Motion, the Response, the Reply, the entire

---

[1] "[#7]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#20].

case file, and the applicable law, and is sufficiently advised in the premises. Based on the following, the Motion [#7] is **GRANTED**.

## I. Background

Plaintiff's claims are based on the following allegations.[3] In September 2015, Eric Stewart ("Stewart") was incarcerated at the Arapahoe County Detention Facility in Arapahoe County, Colorado, awaiting trial on multiple offenses, including attempted murder, a charge which stemmed from a domestic dispute in which Mr. Stewart fired a gun at his girlfriend. *Compl.* [#1] ¶ 13. Mr. Stewart's trial was scheduled to begin on September 14, 2015, in the District Court for the County of Arapahoe. *Id.* ¶ 14. However, when Mr. Stewart appeared for trial, he displayed signs of a severe emotional or cognitive disturbance, including stating that he was hearing voices, which prevented him from participating meaningfully in the judicial process. *Id.* ¶ 15. Based on this behavior, the presiding judge vacated the trial and remanded Mr. Stewart into custody for a mental health and competency evaluation at the Colorado Mental Health Institute in Pueblo, Colorado. *Id.*

Mr. Stewart was returned to the general population of the Arapahoe County Detention Facility, a situation which was expected to continue until space opened up in the overcrowded Pueblo facility. *Id.* ¶ 16. Mr. Stewart was not isolated from other inmates and was not supervised intensively, despite the concerns about his mental health. *Id.* Plaintiff asserts that Defendant Vince Line ("Line") (Bureau Chief, Detention Administration), Defendant Laurie Halaba ("Halaba") (Captain, Detention Administration), and/or Defendant

---

[3] All well-pled facts from the Complaint [#1] are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Jared Rowlison ("Rowlison") (Captain, Detention Operations) knew of Mr. Stewart's condition, asserted mental instability and purported violent propensity, but that these Defendants, and/or personnel acting at the direction of these Defendants, allowed Mr. Stewart to remain among the general jail population. *Id.* ¶ 17.

On the afternoon of October 2, 2015, there were approximately thirty-eight inmates present, unsupervised and unrestrained, in Dayroom A of Pod 3 of the Detention Facility. *Id.* ¶ 18. No Arapahoe County Sheriff's Office personnel were present in Dayroom A at the time.[4] *Id.* The Dayroom was equipped with surveillance cameras, but no personnel were actively monitoring the live feed. *Id.* This particular Dayroom had been the scene of multiple prior physical altercations and fights between inmates, at least some of which resulted in injuries to inmates. *Id.* ¶ 19. Despite these incidents, no steps had been taken prior to October 2, 2015, to increase monitoring or security in the Dayroom or to reduce the number of inmates who could occupy the day room at one time. *Id.*

One of the inmates present in Dayroom A of Pod 3 that afternoon was Michael Craven ("Craven"), who was serving a jail sentence for second degree assault and other offenses. *Id.* ¶ 12. At approximately 2:30 p.m., Mr. Stewart claimed a pot of hot water which allegedly should have been Mr. Craven's, and the two argued. *Id.* ¶ 20. Shortly after, Mr. Craven went upstairs to Mr. Stewart's cell to further discuss the issue. *Id.* ¶ 21. Although Mr. Craven's movements were not violent, Mr. Stewart viciously attacked Mr. Craven in response. *Id.* ¶ 22. Mr. Craven attempted to escape into the hallway, but Mr. Stewart chased him there, tackled him, slammed him into the ground, and began to beat

---

[4] Plaintiff actually states "Dayroom 3" here, but that seems to have been a typographical error.

him about the head, face, and neck.  *Id.*  After approximately forty-six seconds, Mr. Steward stopped beating Mr. Craven and got off of him.  *Id.* ¶ 23.  Mr. Stewart went back downstairs to the table at which he had been previously seated.  *Id.* ¶ 24.  Two inmates then emerged from the area of Cell 3A5 and pulled Mr. Craven into his cell, cell 3A2, and other inmates went upstairs to check on his condition.  *Id.*

The attack was caught on camera and caused a substantial audible disturbance, but despite the event's broadcast to the control room, no Arapahoe County Detention Facility personnel responded for nearly ten minutes after the attack.  *Id.*  Defendant William Rivas ("Rivas"), Defendant B.J. Beatty ("Beatty"), Defendant Molly Nill ("Nill"), Defendant Geoffrey Maisch ("Maisch"), and Defendant Trent Steffa ("Steffa") were on-duty in Pod 3 and were responsible for responding to any disturbances that occurred in Dayroom A.  *Id.* ¶ 25.  Plaintiff asserts that "these Defendants were deliberately indifferent to the risk that failure to provide visible security or actively monitor a Dayroom with more than 35 inmates, including violent and unstable inmates like Mr. Stewart, would result in a violent incident."  *Id.*  They did not see or hear the attack on Mr. Craven as it was occurring and did not respond to break up the altercation or ensure the rapid deployment of medical personnel.  *Id.*  Defendant David Axelrod ("Axelrod") was responsible for monitoring security cameras depicting events taking place in Dayroom A of Pod 3, and Plaintiff asserts that "Defendant Axelrod was deliberately indifferent to the risk [of] failing to monitor the security cameras depicting events in Dayroom A, even though Dayroom A contained more than 35 inmates, including violent and unstable inmates like Mr. Stewart."  *Id.* ¶ 26.  Defendant Axelrod did not see the attack on Mr. Craven as it was happening, did not act to deploy deputies to stop the altercation, and did not summon medical attention promptly.  *Id.*

About ten minutes after the attack, Mr. Craven's cell mate Samson Pacheco entered Cell 3A2 and utilized the intercom to summon assistance. *Id.* ¶ 27. Defendant Axelrod received the alert and asked Defendant Rivas to enter Dayroom A in response to the alarm. *Id.* ¶ 28. Defendant Rivas found an unresponsive Mr. Craven lying on his back in cell 3A2 with visible, severe injuries to his face and head and with glazed-over and dark eyes. *Id.* ¶ 29. Multiple additional deputies responded to the scene and began performing CPR on Mr. Craven. *Id.* ¶ 30. He was thereafter transported by ambulance to Sky Ridge Medical Center and placed on life support. *Id.* ¶ 31. He was pronounced dead on October 3, 2015, at approximately 5:07 a.m., having died of multiple traumatic blunt force injuries. *Id.* ¶¶ 32-33. During the subsequent investigation, Mr. Stewart indicated to the investigators that voices in his head had told him to attack Mr. Craven. *Id.* ¶ 34.

Plaintiff is the Estate of Michael Craven, by and through its personal representative Nicol Nowlin. *Id.* ¶ 4. Plaintiff asserts two claims here: (1) an Eighth Amendment Claim for deliberate indifference against all Defendants, and (2) a *Monell* claim against Defendant Line, Defendant David C. Walcher ("Walcher") (Sheriff of Arapahoe County), Defendant Louie Perea ("Perea") (Undersheriff of Arapahoe County), and Defendant Board of County Commissioners of the County of Arapahoe, Colorado ("BOCC"). *Id.* ¶¶ 35-48. Plaintiff seeks only damages. *Id.* at 11. In the present Motion [#7], Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

**A.  Individual Capacity Claims**

Defendants Line, Halaba, Rowlinson, Axelrod, Rivas, Beatty, Nill, Maisch, and Steffa assert qualified immunity to the extent they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, __ F. App'x __, __, No. 17-1445, 2018 WL 3640817, at *3 (10th Cir. July 31, 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate the plaintiff's statutory or constitutional rights which (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818. A government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

However, "if a violation could be made out on a favorable view of the parties'

submissions," a court must "ask whether the right was clearly established." *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate). A plaintiff may ordinarily show that the constitutional right was clearly established by identifying either (1) an on-point Supreme Court decision, (2) an on-point published Tenth Circuit decision, or (3) favorable "clearly established weight of authority from other courts." *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). "However, we do not always require case law on point, and the Supreme Court has warned that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (internal quotation marks and citations omitted). "We have therefore adopted a sliding scale to determine when law is clearly established." *Id.* "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* at 1135-36. It is not necessary to show that "the very action in question has previously been held unlawful, [but] in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 1136 (internal alterations and quotation marks omitted).

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Gray v. Sorrels*, __F. App'x __, __, No. 17-7063, 2018 WL 3654823, at *2 (10th Cir. Aug. 1, 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted)). "These claims include both an objective and a subjective component." *Gray*, 2018 WL 3654823, at *2 (citing *Riddle v.*

*Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996). With respect to the objective component of a failure-to-protect claim, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Gray*, 2018 WL 3654823, at *3 (quoting *Riddle*, 83 F.3d at 1204 (internal quotation marks omitted)). "A prisoner has a right to be reasonably protected from constant threats of violence . . . from other inmates." *Id.*

The allegations provided which could lead a person to surmise that Mr. Stewart posed a substantial risk of violence are woefully meager. First, Mr. Stewart was awaiting trial on an attempted murder charge stemming from a domestic dispute in which Mr. Stewart filed a gun at his girlfriend. *Compl.* [#1] ¶ 13. Second, when Mr. Stewart appeared for trial on September 14, he stated that he was hearing voices and was remanded into custody for a mental health and competency evaluation. *Id.* ¶ 15. There are no allegations that Mr. Stewart had ever threatened or committed any violence against any person, inside or outside of prison, at any time after (or even before) the alleged domestic dispute occurred. There are no allegations that the voices Mr. Stewart asserted hearing ever suggested to him that he commit violent acts prior to his altercation with Mr. Craven. There are no allegations that the prison had ever experienced a similar situation.[5] Thus, despite the fact that Mr. Craven was obviously seriously harmed and ultimately died, the Court cannot find on these allegations that there was a "substantial risk" of harm leading up to the altercation.

However, even if the Court were to find that the objective component of the deliberate indifference test is met, the claim still fails on the subjective component. On this

---

[5] The bare-bones allegation that physical altercations had previously occurred between inmates there, without more, does not permit the Court to infer that a substantial risk existed. *See Iqbal*, 556 U.S. at 678.

element, the plaintiff must present "evidence of the prison official's culpable state of mind. He must show that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Gray*, 2018 WL 3654823, at *3 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (citation and internal quotation marks omitted); citing *Riddle*, 83 F.3d at 1204). "[T]he official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have also drawn the inference." *Gray*, 2018 WL 3654823, at *3 (quoting *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (brackets, ellipsis, and internal quotation marks omitted)).

Even if the allegations discussed above were sufficient to demonstrate that Mr. Stewart was a substantial risk to other inmates,[6] Plaintiff has not sufficiently alleged that Defendants Line, Halaba, Rowlinson, Axelrod, Rivas, Beatty, Nill, Maisch, and Steffa knew that Mr. Stewart was awaiting trial on an attempted murder charge stemming from a domestic dispute in which Mr. Stewart filed a gun at his girlfriend, or that when Mr. Stewart appeared for trial on September 14, he stated that he was hearing voices and so was remanded into custody for a mental health and competency evaluation. Even if they had known these facts, the Court notes that nothing in the Complaint demonstrates that these Defendants drew an inference that Mr. Stewart created such a risk that substantial monitoring or other actions should have been taken prior to the altercation.

In other words, to warrant *Twombly*'s presumption of truth, Plaintiff must accompany its conclusory phrases regarding what Defendants knew, or should have known, with

---

[6] The Court notes that "it does not matter whether . . . a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 543

circumstantial or direct facts to make deliberate difference "plausible" rather than merely "conceivable." *See Twombly*, 550 U.S. at 547; *Tafoya v. Salazar*, 516 F.3d 912, 916-17 (10th Cir. 2008); *see also Keith v. Koerner*, 707 F.3d 1185, 1188-89 (10th Cir. 2013) (holding that the deliberate indifference standard was not met where the plaintiff argued that because a prison supervisor had certain responsibilities, "he must have been aware of [the aggressor's] criminal intent and did nothing to prevent it"). Plaintiff has not sufficiently made such allegations here with respect to any of the individual Defendants.

Finally, even if the Court were to find that the objective and subjective components were met, and that Plaintiff sufficiently stated a claim, the Court finds that Defendants Line, Halaba, Rowlinson, Axelrod, Rivas, Beatty, Nill, Maisch, and Steffa would be entitled to qualified immunity because, on the facts of this case, the law is not clearly established that Mr. Craven's constitutional rights were violated. Although Plaintiff is correct that prison officials have a duty to protect inmates from violence perpetrated by other inmates, *see, e.g., Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015), the Court has found no case which clearly establishes that duty in this context, where there were no prior altercations or threats by Mr. Stewart or other indication of potential violence besides the facts that he had allegedly been engaged in a domestic violence dispute with his girlfriend prior to his incarceration, that he had heard voices in his head saying unspecified things a couple of weeks prior to the incident with Mr. Craven, and that he had been referred for a competency evaluation. Although the facts of this case need not necessarily closely mirror a past case for the law to be clearly established, they must be such that in the light of pre-existing law, the unlawfulness would be apparent to officials in the positions of these Defendants. *A.M.*, 830 F.3d at 1136. The Court cannot draw that conclusion here.

Although what happened to Mr. Craven was indeed tragic, the Court cannot find that the allegations herein provided are enough to meet the high standard for deliberate indifference under the Eighth Amendment. Accordingly, Defendants Line, Halaba, Rowlinson, Axelrod, Rivas, Beatty, Nill, Maisch, and Steffa in their individual capacities are entitled to qualified immunity, and the claims against them are **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**B.**  *Monell* **Claims**

At the outset, the Court notes that Plaintiff has agreed to voluntarily dismiss claims against Defendant Line and Defendant Perea (Undersheriff of Arapahoe County) in their official capacities. *See Motion* [#7] at 2. Accordingly, Defendant Line and Defendant Perea are **dismissed without prejudice** in their official capacities.

Thus, the Court turns to the claims against Defendant BOCC and Defendant Walcher (Sheriff of Arapahoe County) in his official capacity.[7] *See Compl.* [#1] ¶¶ 41-48. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted). "[T]o hold the entity liable, the plaintiff must identify an official policy or a custom that is the 'direct cause' or 'moving force' behind the

---

[7] "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).

constitutional violations." *Aguilar v. Colo. State Penitentiary*, 656 F. App'x 400, 403 (10th Cir. 2016) (quoting *Dubbs*, 336 F.3d at 1215).

An initial question when discussing liability of a local governing body is whether there was a constitutional violation by its employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). As discussed above in Section III.A., Plaintiff has not adequately alleged an Eighth Amendment violation by any employee of Defendant BOCC or Sheriff Walcher. Therefore, because Plaintiff fails to sufficiently allege a constitutional violation by Defendants, Plaintiff fails to meet this portion of the municipal liability test.

Accordingly, the Motion [#7] is **granted** with respect to the *Monell* claims, which are **dismissed without prejudice**. *Reynoldson*, 907 F.2d at 127.

### IV. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#7] is **GRANTED**, and Plaintiff's claims are **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **CLOSE** this case.

Dated: September 5, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge